UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

THEODIS NELMS, JR.,

        Plaintiff,

        v.                                            Case No. 06-C-0273

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

---

ORDER AFFIRMING THE DECISION OF THE COMMISSIONER
AND DISMISSING CASE

---

        Plaintiff, Theodis Nelms, filed for Supplemental Security Income (SSI) benefits on June 4, 2002. His application was denied initially and on reconsideration. Consequently, Nelms requested an administrative hearing, which was conducted on June 14, 2005. Following the hearing, the Administrative Law Judge (ALJ) concluded that Nelms is not disabled within the meaning of the Social Security Act and not entitled to SSI benefits. The Social Security Administration Appeals Counsel denied Nelms' request for review on January 11, 2006, making the ALJ's determination the final decision of the Commissioner of Social Security. Nelms now seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## I. BACKGROUND

        Nelms was born in 1955, and alleges that he became disabled on November 1, 2000, when he was forty-five years old. (R. at 14.) On May 22, 2002, Nelms was hospitalized for a lung and heart infection, which required surgery on May 30, 2002, to replace his mitral valve with a mechanical valve. (R. at 17.) Following surgery, Nelms

started cardiopulmonary rehabilitation sessions. He participated in at least twenty-one sessions that included walking on a treadmill, lifting weights, and riding an exercise bicycle. (R. at 17, 255, 260, 262, 267, 277, 280.) Resistance was increased throughout the rehabilitation, and medical reports indicate that Nelms tolerated the exercises well through October 2002. (*See id.*)

Follow up exams were generally positive, and doctors reported that Nelms' surgery was successful. On December 26, 2002, Nelms was examined by Dr. Thomas Jackson. (R. at 314.) Dr. Jackson noted that Nelms' list of health problems included hypertension, alcohol and tobacco abuse, and chronic obstructive pulmonary disease. (*Id.*) He noted that Nelms consumes about six beers per day and smokes four or five cigarettes per day. (*Id.*) He further noted that Nelms denied any fatigue, depression, anxiety, coughing, nausea, weakness, or headaches. Nelms' hypertension was controlled by medication, there were no signs of bronchitis, and Dr. Jackson counseled him about the hazards of alcohol and tobacco use. (R. at 315.)

In March 2003, Nelms was admitted to the hospital following an overdose of anticoagulant medication, combined with alcohol consumption, that caused internal bleeding. (R. at 381.) On May 17, 2003, Dr. Ijaz Malik, Nelms' cardiologist, found that Nelms no longer had bleeding issues. (R. at 372.) Dr. Malik also noted that Nelms had no history of back pain and no shortness of breath. (*Id.*)

On May 22, 2003, and June 12, 2003, Dr. Jackson examined Nelms for back pain, knee pain, and pain in his thigh. (R. at 368-70.) Dr. Jackson observed that Nelms may have disk disease in his lower back. (R. at 369.) He recommended pain medication and referred Nelms to physical therapy, which Nelms did not perform as recommended.

(R. at 369-70.) On July 14, 2003, Nelms was examined by Dr. Malik. Dr. Malik found that Nelms was doing well following his mitral valve replacement and was borderline hypertensive. (R. at 366.)

The record indicates that two Physical Residual Functional Capacity Assessments were performed by state agency physicians following Nelms' surgery. On December 23, 2002, an assessment was conducted by Dr. Chan. (R. at 305.) Dr. Chan recorded that Nelms could (1) occasionally lift or carry twenty pounds; (2) frequently lift or carry ten pounds; (3) stand and walk about six hours out of an eight-hour day; (4) sit for about six hours out of an eight-hour day; and (5) had no limitations on his ability to push or pull. (R. at 306.) On August 8, 2003, Dr. Callear[1] completed a Physical Residual Functional Capacity Assessment on Nelms. Similar to the assessment of Dr. Chan, Dr. Callear concluded that Nelms could (1) occasionally lift or carry twenty pounds; (2) frequently lift or carry ten pounds; (3) stand and walk about six hours out of an eight-hour day; (4) sit for about six hours out of an eight-hour day; and (5) had no limitations on his ability to push or pull. (R. at 401-08.)

On June 14, 2005, he ALJ held a hearing at which Nelms, appearing without an attorney, provided the only testimony. Nelms testified that his abilities are limited based on four health problems, from most limiting to least limiting: his heart, his lower back, his legs, and asthma. (R. at 432-33.) With regard to his lower back pain, Nelms testified that his doctor informed him that it "may be arthritis setting in" and to keep exercising. (R. at 434.) He stated that the pain was "all day, every day" and causes him to toss and turn

---

[1] The physician's signature in the record (R. at 401-08) is illegible. However, the plaintiff's brief (Am. Br. 3) and the ALJ's decision (R. at 18), identify the physician as Dr. Robert Callear.

3

every night, all night long. (R. at 432-33, 37.) However, he also testified that the pain comes and goes. (R. at 438.) Nelms was taking methadone for his back and leg pain, which he stated was "helping, but its not helping that much." (R. at 436.) He claimed that he can walk about two blocks, but that lately he can only walk about a half a block, and suffers shortness of breath due to environmental factors, including pollen and hot or cold temperatures.

The ALJ asked Nelms about his work history, and provided Nelms opportunities to explain how his ailments impacted his daily life. Nelms stated that he has not looked for work since his mitral valve replacement surgery in 2002. His most recent job prior to surgery was as a dishwasher, but he was fired for insubordination after six or seven months. (R. at 425.) As for daily household tasks, Nelms stated that he can occasionally rake leaves, shovel snow, walk to the grocery store, cook, and clean. He still consumes two or three beers per day, but he has "slowed down drinking a lot." (R. at 440.)

## II. THE ALJ'S DECISION

The ALJ concluded that Nelms was not disabled and, therefore, not entitled to SSI benefits. To obtain SSI benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has adopted a sequential five-step test for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4).

Under this test, the ALJ must determine: (1) whether the claimant is engaged in substantial gainful activity, (2) if not, whether the claimant has a severe impairment, (3)

4

if so, whether the claimant's impairment(s) meets or equals one of the impairments listed in the Administration's regulations, 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"), as being so severe as to preclude substantial gainful activity, (4) if not, whether the claimant can perform his past relevant work, and (5) if not, whether the claimant can make the adjustment to other work based on his residual functional capacity (RFC). 20 C.F.R. § 416.920(a)(4); *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

If the claimant makes the necessary showing at steps one to three, he will be found disabled. If the impairment is not of such severity as to be presumptively disabling in the listings, the ALJ must consider at step four whether the claimant possesses the residual functional capacity to perform past work. If not, the burden shifts at step five to the Commissioner to demonstrate that the claimant can successfully perform a significant number of other jobs that exist in the national economy. *Young*, 362 F.3d at 1000.

The ALJ followed the process through step five, making the following findings: (1) Nelms has not engaged in substantial gainful activity since the alleged onset of disability; (2) Nelms' suffers from impairments considered "severe" under 20 C.F.R. 416.920(c)[2]; (3) the impairments do not meet or equal any of the listed impairments in Appendix 1, Subpart P, Regulation Number 4; (4) Nelms' allegations regarding his limitations are not credible; and (5) Nelms has residual functional capacity for a full or nearly full range of light jobs and some lower-end medium range jobs. (R. at 21-22.) In

---

[2] A severe impairment is one that "significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The ALJ noted that, based on the medical evidence, Nelms' sever impairments relate to his mitral valve replacement, asthma, alcohol abuse, and complaints of a sore back. (R. at 15.)

5

support of these conclusions, the ALJ found that Nelms' relevant work history includes a wide variety of medium range jobs. (R. at 15.) Based on his conclusion that Nelms retains the residual functional capacity for a full or nearly full range of light jobs, the ALJ concluded, with noted reservations, that Nelms "probably cannot perform his past jobs." (R. at 16.) The ALJ stated that "[t]he state agency doctors found no listing was met or equaled, and nothing written about in the treating source notes suggests anything like a listing level impairment of any sort." (R. at 16.)

## III. DISCUSSION

Under § 405(g), the district court's review is limited to determining whether the ALJ's decision is supported by "substantial evidence" and is based on the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). The ALJ's findings of fact, if supported by substantial evidence, are conclusive. *Id.* Substantial evidence is such relevant evidence as a reasonable person could accept as adequate to support a conclusion. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). This court cannot reweigh evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). If the ALJ commits an error of law, however, reversal is required without regard to the volume of evidence in support of the factual findings. *Id.* The ALJ commits such an error if he fails to comply with the Commissioner's regulations and rulings. *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991).

An ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability," *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (*quoting Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)), "build[ing] an accurate and logical bridge from the evidence to his conclusion," *id.* at 872. Although the ALJ need not discuss every

6

piece of evidence, he cannot select and discuss only the evidence supporting the decision. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Evidence favoring as well as disfavoring the claimant must be examined by the ALJ, and the ALJ's decision should reflect that. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The district court should remand the case if the ALJ's decision lacks evidentiary support or is "so poorly articulated as to prevent meaningful review." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) (internal quotation marks omitted). A "sketchy opinion" may be sufficient, however, if it is clear the ALJ considered the important evidence and his reasoning can be traced. *Id.* at 787

In the appeal before this court, Nelms asserts three primary errors by the ALJ and requests remand: (1) the ALJ did not fully and fairly develop the record; (2) the ALJ did not adequately assess his residual functional capacity consistent with Social Security Ruling (S.S.R.) 96-8p; and (3) the ALJ did not adequately assess his credibility based upon the requirements of S.S.R. 96-7p. (*See* Pl.'s Am. Br.) Relatedly, Nelms' asserts that medical records not considered by the ALJ are material to the claim and require remand pursuant to sentence six of 42 U.S.C. § 405(g). Each of these issues is addressed below.

A. Developing the Record

"It is a basic obligation of the ALJ to develop a full and fair record." *Smith v. Sec'y of Health, Educ. & Welfare,* 587 F.2d 857, 860 (7th Cir. 1978). "The ALJ's duty to develop the record fully and fairly where the claimant proceeds without counsel is met if the ALJ probes the claimant for possible disabilities and uncovers all of the relevant evidence." *Binion*, 13 F.3d at 245; *see also Smith*, 587 F.2d at 860 ("[W]here the disability benefits claimant is unassisted by counsel, the administrative law judge has a duty

7

scrupulously and conscientiously (to) probe into, inquire of, and explore for all the relevant facts." (*quoting Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972))). Factors considered in determining if the record has been fully and fairly developed include whether the ALJ obtained all relevant medical and treatment records from plaintiff's treating physicians, whether the ALJ elicited detailed testimony from the plaintiff at the hearing, whether the ALJ probed all relevant areas, questioning plaintiff about the medical evidence in the file, including medication, pain, daily activities, and physical abilities. *See Binion*, 13 F.3d at 245 (7th Cir. 1994) (finding that ALJ's compliance with these requirements led to a full and fair record). Although there is no hard and fast standard that delineates what is full and fair development of the record, "'a significant omission is usually required before this court will find that the Secretary failed to assist pro se claimants in developing the record fully and fairly.'" *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir.1997) (quoting *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994)). "In other words, the omission must be prejudicial." *Nelson*, 131 F.3d at 1235.

In support of his argument that the ALJ did not fully and fairly develop the record, Nelms asserts that the (1) ALJ's failure to question Nelms sufficiently about the extent of his back pain and asthma, and (2) the ALJ's failure to obtain and consider all the available medical records, led to the adverse decision and prejudiced his claim. Also, Nelms suggests that the shortness of the hearing, a mere twenty-five minutes, was "a factor which adversely affected the ALJ's decision and prejudiced [Nelms'] case." (Pl.'s Am. Br. 8.)[3]

---

[3] For support on that point, he cites to *Sears v. Bowen*, 840 F.2d 394, 403 (7th Cir. 1988), in which the court noted the shortness of the hearing was, while not sufficient in itself to cause remand, one of "a number of different factors, some minor, and including the very impairments themselves, which resulted

8

As to his back pain, Nelms asserts that the ALJ "never asked Plaintiff if he had good days or bad days because of the lower back pain or what he could not do on bad days if he had them." (Pl.'s Am. Br. 9.) Further, the ALJ allegedly shifted the discussion from Nelms' back pain when Nelms tried to describe his symptoms, did not ask Nelms why he was taking methadone "as opposed to some type of narcotic pain medication," and did not inquire about any side effects of the methadone or other pain medications. (*Id.*)

While it is true that the ALJ "has a duty in such a case to ask questions that will elicit a full picture of the applicant's capacity for full-time gainful employment," he is not required to ask questions that cue the plaintiff to exaggerate his condition. *Johnson v. Barnhart*, 449 F.3d 804, 807 (7th Cir. 2006). In this case, the ALJ asked Nelms to describe his back pain: "is it stiffness or weakness or pain or what is it?" Nelms went on to state that his back pain is "stiffness and it's pain." The discussion pinpointed the location of the pain (lower back), Nelms' primary doctor's recommendations, his specialist's recommendations, the frequency and duration of pain (all day, on and off), and the medication prescribed. (R. at 437-39.) Nelms' assertion that the ALJ shifted the discussion is not convincing because it is apparent from the record that the ALJ attempted to keep Nelms focused on addressing his ailments in turn. The questions asked by the ALJ with regard to Nelms' back pain were sufficient to develop the record: the ALJ provided Nelms the opportunity to fully explain his back pain symptoms, his doctors' recommendations, and how back pain impacts his life. Further, Nelms described the activities that he can perform, including occasionally raking leaves, shoveling snow, walking to the grocery store, and washing clothes. These

---

in Sears' mental impairments not being considered by the ALJ or the Appeals Council." With this in mind, the shortness of the hearing is itself only relevant if the ALJ did not fulfill his duty to develop the record within that time.

9

activities, while not necessarily determinative on the issue of disability, relate to the impact that back pain has on Nelms' functional capabilities. *Cf. Clifford*, 227 F.3d at 872 (noting that the ALJ's mere recitation of minimal daily activities does "not establish that a person is capable of engaging in substantial physical activity").  Additional questions along the lines that Nelms' now argues are not required to remedy any significant, prejudicial omission in the record.

Nelms faults the ALJ for not asking him more probing questions "about what triggers his asthma and how it affected his activities," and not inquiring about his chronic obstructive pulmonary disease. (Pl.'s Am. Br. 11.) Nelms was diagnosed with asthma and chronic obstructive pulmonary disease that impacts his breathing.  However, it is not apparent what additional information the ALJ would have received in asking more "probing questions about what triggered his asthma" or how a more probing interrogation would lead to facts material to the ALJ's findings. At the hearing, the ALJ asked Nelms "How about the asthma, anything I should know about the asthma?  Is there anything in particular that [will] trigger it or is there nothing in particular?"  (R. at 443.)  In response, Nelms informed the ALJ that temperature extremes and environmental factors such as pollen trigger his asthma symptoms.  He also indicated that he takes medication for his asthma, keeps an inhaler on him, and that he has dealt with asthma for over twenty years.  (R. at 444.)

In his decision, the ALJ referred to Nelms' physical and cardiovascular examinations following his mitral valve replacement as well as Nelms' well-tolerated physical therapy sessions.  The records indicate that Nelms was treated with inhalers and medication.  Apparently agreeing with Nelms' that his breathing problems may impact his functional capabilities, the ALJ found that Nelms should "avoid outdoor work on warm,

10

humid days, or avoid work in hot work places." (R. at 20.) The ALJ further noted Nelms' testimony that his breathing problems were the least severe of the four ailments he attributes to his disability, and that Nelms' asthma was not related to the loss of his most recent job as a dishwasher. Therefore, Nelms fails to show that additional questions would have revealed material evidence of disability or that the record was not fully and fairly developed on this point.

Nelms further asserts that the record was not fully and fairly developed because the ALJ did not obtain his updated medical records that were available prior to the hearing. With his brief, Nelms attaches an additional 100 pages of documents, generated between October 13, 2003, and April 28, 2005, which he argues are "important to the determination of his claim" yet were not considered by the ALJ. (Pl.'s Am. Br. 11.) The additional documents include notes from Dr. Malik, the Aurora Sinai Medical Center, the Anticoagulation Clinic, and the Primary Care Clinic, as well as CT scan reports and hospital admission reports. Nelms separately asserts that the ALJ's failure to request and review these documents requires remand under sentence six of 42 U.S.C. § 405(g).

In fully developing the record, the ALJ is not required "to update objective medical evidence to the time of hearing." *Luna*, 22 F.3d at 693. Under 20 C.F.R. § 404.1512(d), the Commissioner has the responsibility to develop the claimant's "complete medical history," which consists of medical sources covering at least the twelve months preceding the month that the claimant filed his application—in this case, June 4, 2002. The Commissioner has the responsibility of obtaining additional medical information if she is not able to reach a conclusion as to the claimant's disability due to insufficient or conflicting evidence. *See* 20 C.F.R. § 404.1527(c)(3). "While the ALJ has a heightened

11

duty to make sure that the record is developed when a claimant is unrepresented, how much evidence to gather is a subject on which we generally respect the Secretary's reasoned judgment." *Luna*, 22 F.3d at 692 (internal citations omitted); *see also Johnson*, 449 F.3d at 808 (noting that even the pro se litigant has a responsibility to develop the record); *Luna*, 22 F.3d at 693 (noting that the plaintiff has a duty to bring all evidence of disability to the ALJ and that an ALJ's failure to obtain additional records was not reversible error).

The district court can remand a case to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g). Under sentence six, remand is available upon a showing by the claimant that there is new evidence which is material to the Commissioner's decision and that there is good cause for his failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); *see also Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999).

In this case, the ALJ had a substantial medical history from which to make his determination, including medical records produced after Nelms filed his application.[4] Further, Nelms brought additional material to the hearing that the ALJ considered before issuing his decision. (R. at 424, 431.) Based on the information at hand at the time the decision was issued, the ALJ determined that Nelms' back ailments, asthma, and heart condition qualify as "severe" under the 20 C.F.R. § 416.920.

The updated medical information provided by Nelms contains information both favorable and unfavorable to his disability claims. The new documents include

---

[4] The record presented to the court is 445 pages. While this number includes the transcript of the hearing (23 pages) along with the ALJ's decision and related appeals information, Nelms' medical records constitute the bulk of the record before the court.

12

records of follow up visits with Dr. Malik, which are generally unremarkable. (Am. Br. Ex. A. at 15, 19, 24, 30, 33.) They also include objective medical evidence indicating a degenerative disk condition in Nelms' lower back and pain radiation to the legs. (*Id.* Ex. B. at 7, 9, 10, 12, 13, 20, 25, 27, 30, 35, 40, 45, 49, 55, 59.) However, while physicians document Nelms' back condition and treatments, the records indicate that pain is generally managed through medication. (*See id.*) The updated records do not provide additional information as to whether or how his managed back pain significantly diminishes his functional capacity beyond the limitations of a light work RFC designation. Further, the records unfortunately indicate that Nelms' continued alcohol use, despite repeated warnings not to drink, contributes to his ailments, particularly with regard to complications with his heart medications.

While the updated medical records provide information about Nelms' conditions that may have been helpful to the ALJ in articulating his decision, the ALJ was not required to secure these records, and Nelms has not demonstrated that the ALJ's failure to secure these records resulted in a "significant omission" that prejudiced his claim. Importantly, none of the updated records speak directly to the question of whether Nelms is in fact disabled—the key point in this case. As to sentence six, Nelms makes no showing that his failure to produce the records prior to the hearing was due to good cause. Consequently, Nelms fails to demonstrate that the new records are material and that remand is warranted.

B. Residual Functional Capacity

Because the ALJ found that Nelms had a severe impairment and that he could not perform past work, step five of the sequential analysis required the ALJ to assess

13

Nelms' RFC. Nelms submits that the ALJ committed an error of law by not adequately assessing his RFC consistent with S.S.R. 96-8p. (Pl.'s Am. Br. 11.) Nelms claims the error resulted from the ALJ's (1) failure to provide "information about the exertional [or] nonexertional requirements of the light jobs he found Plaintiff could perform"; and (2) failure to provide "a function by function assessment of light work or the lower end exertional range of medium work." (R. at 13.)[5]

"Residual functional capacity (RFC) is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari,* 270 F.3d 1171, 1178 (7th Cir. 2001). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may [the] RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." S.S.R. 96-8p, *available at* 1996 WL 374184. An ALJ must consider the medical and nonmedical evidence in the record when making an RFC determination. *See* 20 C.F.R. § 404.1545; *see also Zurawski,* 245 F.3d at 889 ("While we have never required an ALJ to address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits.").

---

[5] In arguing that the Commissioner committed error in determining his RFC, Nelms also submits that "ALJ failed to discuss Plaintiff's hospitalization, initially in intensive care, in March 2002 for over-anticoagulation; intra-abdominal bleed; renal insufficiency. He also failed to discuss Plaintiff's continued problems with maintaining his INR levels, being either subtheraputic or supratheraputic." (Am. Br. 12.) However, Nelms does not mention how these conditions impact his exertional or nonexertional capacities, or how failure to discuss these conditions qualifies as an error of law. Further, while these are serious health concerns, they appear to be individual events or controllable conditions associated, at least in part, with Nelms' failure to follow his medication regimen and consumption of alcohol. (R. at 372, 374, 381-82.) The same appears to be true with regard to Nelms' INR levels. Therefore, the ALJ's failure to specifically mention these matters does not impact the outcome of this case. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (refusing to remand case based on ALJ's failure to state how obesity impacts plaintiff's ability to work when plaintiff fails to identify a related limitation).

14

Exertional capacity refers to the claimant's physical limitations and abilities to perform seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. S.S.R. 96-8p. Nonexertional capacity refers to work-related limitations and abilities not otherwise considered, including postural, manipulative, visual, mental, communicative abilities, as well as the ability to tolerate environmental factors such as temperature. "It is the nature of an individual's limitations or restrictions that determines whether the individual will have only exertional limitations or restrictions, only nonexertional limitations or restrictions, or a combination. . . ." *Id.*

Here, the ALJ determined that Nelms could perform light work or lower-end medium work. Under the regulations, light work involves the following:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

In determining Nelms' RFC, the ALJ found that Nelms' recovered his capacity to work following his mitral valve replacement. The ALJ referred to Nelms' past physical therapy activities, daily activities, medical records, and the Physical Residual Functional Capacity Assessments performed by Dr. Callear and Dr. Chan. Those doctors found that

15

Nelms could (1) occasionally lift or carry twenty pounds; (2) frequently lift or carry ten pounds; (3) stand and walk about six hours out of an eight-hour day; (4) sit for about six hours out of an eight-hour day; and (5) had no limitations on his ability to push or pull. (R. at 401-08.) The ALJ also considered Nelms' testimony that he was disabled, and rejected that testimony as less than credible. There appears to be no medical report in conflict with the assessments performed by Dr. Chan and Dr. Callear, and Nelms points to no medical opinion that states that his ailments constitute long-term disability and prevent him from performing any work. More to the point, Nelms presents no evidence, other than his own testimony that he is "disabled," and is limited as to any specific functional capacity. *See* S.S.R. 96-8p. Further, in listing environmental restrictions stemming from Nelms' asthma, the ALJ considered the nonexertional capacity limitations presented by Nelms. Thus, the ALJ has supported his RFC finding by addressing the relevant medical and nonmedical evidence. Moreover, the ALJ has satisfied the function-by-function assessment required by S.S.R. 96-8p because he explicitly incorporated into his decision the reports of Dr. Callear and Dr. Chan, which identify Nelms' functional capacity on a function-by-function basis. While it is true that the ALJ did not describe each finding of these physicians, it is not necessary for this court to remand the case solely for the ALJ to insert language that is otherwise incorporated by repeated reference.

## C. Credibility

The ALJ found Nelms' testimony regarding the extent of his disability to be weak. Nelms now asserts that the ALJ's credibility determination was erroneous because it was not consistent with S.S.R. 96-7p. He argues that the ALJ based his findings on speculation and points to the ALJ's statements that Nelms' functional capacity may

16

enhance if he quit drinking and smoking, followed a better diet, and used his medications as prescribed. (Pl.'s Am. Br. 14.) In addition, Nelms maintains that the ALJ did not adequately support his finding that Nelms had a poor work history. (*Id.*)

S.S.R. 96-7p provides an extensive discussion of what can and should be considered by an ALJ's in making a credibility determination. In general,

> [t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

*Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007) (quoting S.S.R. 96-7p). Among the factors to be considered by the ALJ are medical findings, medical opinions by treating and examining physicians and other medical sources, the claimant's work history, daily activities, alleged symptoms, the consistency of the claimant's statements in light of the record, whether the claimant is following the recommended treatment schedule and if not why not, and personal observations by the ALJ of the claimant. *See* S.S.R. 96-7p, *available at* 1996 WL 374186. "Generally, the ALJ is in the best position to determine credibility, and if an ALJ gives specific reasons that are supported by the record, his or her determination will stand." *Murphy v. Astrue*, 496 F.3d 630, 635 (7th Cir. 2007) (internal citation omitted).

Here, while the ALJ may have speculated that Nelms' functional capacity "might even approach full medium exertional levels" if he were to quit drinking and

17

smoking, that speculation, in light of all of the evidence, does not warrant remand.[6] In fact, the ALJ listed and discussed in depth the following factors as contributing to his finding on Nelms' credibility: failure to follow medical advice, poor work history, demeanor at the hearing, self-contradicting testimony, and testimony conflicting with medical records.

With regard to medical advice, there appears to be no debate that Nelms repeatedly ignored advice from his treating and examining physicians, specifically as it related to his medication regimen and his continued drinking[7] and smoking. Nelms was repeatedly warned of the dangers of continued drinking and smoking by his physicians and other medical personnel, especially in light of his heart medication and breathing problems. (*See, e.g.*, 272, 286, 302, 315, 334, 354, 356, 368-69, 373, 375, 382, 399.) Further, at the hearing, Nelms testified that he was still drinking "two or three cans of beer a day." (R. at 440.)

Nelms' assertion that the ALJ speculated about Nelms' work history in reaching his credibility conclusion is also unconvincing. While it is true that there does not appear to be any specific documentation in the record from which the ALJ could conclude the years when Nelms was ages 27 to 47 were "a period full or nearly full employment years and some labor shortage years," this statement is not material to the conclusion. The record indicates that Nelms held numerous jobs over the past fifteen years. (R. at 60-62, 68, 86, 100.) At the hearing, the ALJ repeatedly asked Nelms about his work history

---

[6] Further, this speculation appears to be immaterial because (1) the ALJ indicates it is speculation by using the words "might even" and (2) the ALJ did not conclude that Nelms could indeed perform at a medium work level.

[7] On alcohol use, the ALJ found that Nelms does not have an involuntary alcohol addiction, but instead enjoys drinking with friends and has cut back from the days in which he used to "party a lot." (R. at 18.) The record supports these conclusions, which are not disputed by Nelms.

18

and provided Nelms the opportunity to describe all of his past work experiences. (R. at 424-30.) Nelms testified that he has not looked for work since 2002, when he was fired from his last job for insubordination. (R. at 425.) He also testified that he had been fired from previous jobs for nonmedical reasons, including failure to report to work when required. (R. at 426.)

This evidence is sufficient for the ALJ to use Nelms' work history as a factor under cutting credibility. The ALJ's description of the evidence considered in support of his credibility determination, including the factors discussed above along with Nelms' broad and sometimes conflicting testimony satisfies the requirements of S.S.R. 96-7p. Therefore,

IT IS ORDERED that the decision of the Commissioner is affirmed.

Dated at Milwaukee, Wisconsin, this 30th day of January, 2008.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE
